# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MICHAEL D. JOHNSON, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:13-689 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of | § | |
| Social Security, | § | |
| | § | |
| *Defendant*. | § | |

## REPORT AND RECOMMENDATION

Michael D. Johnson ("Johnson") seeks review under 42 U.S.C. § 405(g) of a decision by the Commissioner of Social Security ("Commissioner") denying Johnson's request for a waiver of overpayment of Title II[1] disability insurance payments in the amount of $25,949.10.

## I. Judicial Review

A reviewing court's limited role under 42 U.S.C. § 405(g) is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g).

---

[1] Disability insurance benefits, authorized by Title II of the Social Security Act and funded by social security taxes, provide income to insured individuals forced into involuntary, premature retirement by reason of disability *See* 42 U.S.C. § 423(d)(1)(A).

## II. Background

Johnson was adjudicated as disabled commencing October 1996 due to a physical back impairment and a mental affective mood disorder. (T. 185).[2] Thereafter, and at all times relevant to this action, he received a monthly disability benefit of $761 per month.

Johnson subsequently engaged in a "trial work period" (*See* Section V.*A., infra*) during which he received substantial self-employment income from a business named "Jack of All Trades." That trial period ended in June, 2007, but Johnson continued his self employment. (T. 50). During this time, he received both substantial self-employment income and disability payments.

In June, 2010, after receiving an "earnings alert," the payment center for the Social Security Administration ("SSA") initiated a continuing disability review ("CDR"). (T. 50, 221). On June 30, 2010, SSA sent Johnson a Notice of Proposed Decision, advising that his disability ended July 2007 because of his engaging in substantial work, and "you are not entitled to payments for: October 2007 and continuing." (T. 39-42). The notice further advised Johnson of his opportunity to provide the SSA with more information to consider before issuing its decision. (T. 39).

On July 25, 2010, SSA issued a Notice of Disability Cessation informing Johnson that his disability had ended and that he was not entitled to disability payments beginning October 2007.[3] (T. 43-48). Additionally, it noted that, as of July 2010, Johnson was no longer eligible for disability payments because he

---

[2] "T." followed by a number refers to the page of the administrative record. (Dkt. No. 11).

[3] The SSA noted Johnson's extended period of eligibility months were July 2007 through June 2010. (T. 43). It informed him "[s]ince your earnings were substantial in October 2007 through June 2010, you are not entitled to payment for those months." (*Id*.).

had engaged in substantial work. (T. 44). It further advised Johnson that "[b]ecause we did not stop your checks until July 2010, you were paid $25,949.10 too much in benefits." (*Id.*). This notice set forth Johnson's rights with respect to overpayment: (1) his right to appeal within 60 days and request the determination be reconsidered; and (2) his right to request a waiver – *i.e.*, a determination concerning the need to recover the overpayment. (*Id.*).

Johnson requested a waiver, asserting that the overpayment was not his fault, that he could not afford to pay the money back, and repayment would be unfair. (T. 162-70). Johnson supplied additional information wherein he asserted that he did not know that he was overpaid because his benefits continued. (T. 163). He further claimed that the overpayment was not his fault because he reported income from his self-employment to "Mrs. Yeager" every year at tax time. (T. 163, 170).

Johnson's request for waiver was denied by the district SSA office. (T. 49–50). Johnson sought reconsideration of the determination, which was denied. (T. 159-160). Johnson then filed a request for hearing before an administrative law judge. (T. 171).

In May 2011, administrative law judge John Pickett ("ALJ Pickett") conducted a hearing at which Johnson appeared *pro se*. (T. 16-17). ALJ Pickett advised Johnson of his right to counsel and his right to adjourn the hearing to obtain representation. (*Id.*). Johnson acknowledged his rights, waived his rights, and testified. (T. 14-30).

In July 2011, ALJ Pickett issued a decision denying Johnson's request for a waiver of the overpayment of benefits. (T. 11-13). Johnson filed a request for review of ALJ Pickett's decision with the Appeals Council (T. 6-7), which, on

April 17, 2013, declined Johnson's request for review. (T. 3-5). Johnson then instituted this proceeding *pro se*.

### III. Commissioner's Decision

ALJ Pickett denied Johnson's request for a waiver of overpayment of benefits. (T. 11-13). After considering evidence of record, ALJ Pickett made the following findings:

1. The claimant was overpaid benefits in the amount of $25,949.10 during the period October 1, 2007 to July 31, 2010;
2. The claimant was at fault in causing the overpayment; and
3. Recovery of the overpayment is not waived, and the claimant is liable for repayment of $25,949.10 during the period October 1, 2007 to July 31, 2010.

(T. 12-13).

### IV. Ripeness

The Commissioner submitted a brief which contends that ALJ Pickett applied correct principles of law, and that his findings enumerated above are supported by substantial evidence. (Dkt. No. 14). Johnson has not submitted a brief, even though he was notified *three times* of his opportunity and responsibility to present arguments regarding any alleged errors in the decision: (1) General Order 18 issued June 17, 2013; (2) an order setting the parties' respective briefing deadlines entered July 7, 2014; and (3) a text notice advising Johnson of his April 24, 2014 deadline to file his brief. The latter was entered on the docket and mailed to Johnson on March 10, 2014. (Dkt. Nos. 4, 13). The deadline for filing a brief has now expired.

The undersigned concludes that the case is ripe for consideration without further delay. Courts reviewing administrative adjudications cannot receive

additional evidence, and must decide cases on existing administrative evidentiary records. Consequently, neither Johnson nor the Commissioner is entitled to another evidentiary hearing before this court. Also, because Johnson is *pro se*, a reviewing court must construe his complaint to raise the strongest argument it suggests. *Ming v. Astrue*, 07 Civ. 4567(DLI)(SMG), 2009 WL 2495947, at *4 (E.D.N.Y. Aug. 13, 2009)(quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). Finally, Johnson will have an opportunity to object to any portion of this report that he believes to be factually or legally incorrect.

## V. Governing Principles of Law

*A.    Trial Work Period*

Individuals receiving social security disability insurance payments may test their ability to return to work by engaging in a "trial work period."[4] *See* 20 C.F.R. § 404.1592(a). During that time, social security disability payments continue even though recipients earn additional income, regardless of amount. *See id.*, at § 404.1592. A trial work period cannot last longer than nine months,

---

[4] "Trial work period" is a special designation and is defined by regulation as follows:

> The trial work period is a period during which you may test your ability to work and still be considered disabled. . . . During this period, you may perform services . . . in as many as 9 months, but these months do not have to be consecutive. We will not consider those services as showing that your disability has ended until you have performed services in at least 9 months. However, after the trial work period has ended we will consider the work you did during the trial work period in determining whether your disability ended at any time after the trial work period.

20 C.F.R. § 404.1592(a).

but those months need not be consecutive. 20 C.F.R. § 404.1592(e)(1)-(2). They can take place in segments over the course of sixty months. *Id.*

A person who receives disability insurance benefits has a responsibility to report to SSA relevant changes pertaining to any return to work or earnings or increases. 20 C.F.R. § 404.1588(a). When recipients report changes in their work activity, SSA issues receipts verifying that they have properly fulfilled their obligation to report and, thereafter, the information is logged in to a centralized computer file. *See* 20 C.F.R. § 404.1588(b). Reports can be made by calling a toll-free number or by visiting a local SSA office, the location of which can be obtained by visiting SSA's website. *See* The Red Book - A Guide to Work Incentives, *The Official Website of the Soc. Sec. Admin.*, http://www.socialsecurity.gov/redbook/, at p. 13 (last visited July 12, 2014). Recipients are instructed to keep their receipts with all of their other important papers from Social Security. *Id.*

At the conclusion of a trial work period, the Commissioner conducts a continuing disability review. If, during the trial work period, an individual demonstrates ability to resume substantial work, disability ends. *See* 20 C.F.R. §§ 404.1592(e)(3), 404.1594.[6]

---

[5]     *See also,* Trial Work Period, *The Official Website of the Soc. Sec. Admin.*, http://www.ssa.gov/oact/cola/twp.html, (last visited July 12, 2014).

[6]     The Commissioner's regulation provides as follows:

```
If you are entitled to disability benefits as a disabled worker
...there are a number of factors we consider in deciding whether
your disability continues. We must determine if there has been any
medical improvement in your impairment(s) and, if so, whether this
medical improvement is related to your ability to work. . . .. Even
where medical improvement related to your ability to work has
occurred . . ., we must also show that you are currently able to
engage in substantial gainful activity before we can find that you
are no longer disabled.
```

20 C.F.R. § 404.1594(a)(emphasis added).

B.   *Recovery and Waiver of Overpayment of Benefits*

Adjustment and recovery of excess Social Security benefit payments is governed by 42 U.S.C. § 404, which provides in relevant part:

> Whenever the Commissioner of Social Security finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made….

42 U.S.C. § 404(a)(1). Section 404(b) of the Act, however, allows for waiver of recovery of an overpayment of benefits in certain instances. Specifically, an implementing regulation states that "there will be no adjustment or recovery in any case where (1) an overpayment has been made to an individual who is without fault, and (2) when adjustment or recovery would either defeat the purpose of the Act, or be against equity and good conscience." *Hannon v. Barnhart*, 134 Fed. App'x 485, 486 (2d Cir. 2005) (summary order) (internal quotations omitted) (citing 20 C.F.R. § 404.506).

An individual seeking waiver of overpayment bears the burden of proof that he was without fault. *See Hannon*, 134 Fed. App'x at 487; *see also* 20 C.F.R. § 404.506(c) and § 404.509(a)(1). It is not enough to show good faith; rather, an honest mistake may be sufficient to constitute fault. *Barone v. Bowen*, 869 F.2d 49, 51 (2d Cir. 1989) (quoting *Center v. Schweiker*, 704 F.2d 678, 680 (2d Cir. 1983)). When an individual fails to show he was without fault, the inquiry ends. Thus, whether recovery of the overpayment would defeat the purpose of Title II or would be against equity and good conscience is not considered in that circumstance. *Langella v. Bush*, 161 Fed. App'x 140, 142 (2d Cir. 2005) (summary order).

When determining a party's "fault," SSA must "consider all pertinent circumstances," which include "the individual's age and intelligence, and any

physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual has." 20 C.F.R. § 404.507. When determining whether a person receiving an overpayment was without fault, SSA considers:

    (a)    Any incorrect statement that a person knew or should have known to be incorrect;

    (b)    Failure to furnish information that was known or should have been known to be material;

    (c)    Acceptance of a payment that a person either knew or could have been expected to know was incorrect; and

    (d)    Reliance on erroneous information from an official source within the Social Security Administration with respect to the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto.

*See* 20 C.F.R. §§ 404.507, 404.510a.

Finally, "fault" applies only to individual recipients, not the Social Security Administration. 20 C.F.R. § 404.507. Even though SSA may have been at fault in making an overpayment "that fact does not relieve the overpaid individual or any other individual from whom the administration seeks to recovery the overpayment from liability for repayment." *Id*.

## VI. Discussion

Johnson received Social Security benefits of $761 per month after his trial work period ended. (T. 18). He does not dispute that he was working for his business, Jack of All Trades, while receiving these benefits. (T. 18-20, 166). For such work, Johnson's earnings significantly exceeded substantial gainful activity

levels in 2007, 2008, and 2009.[7] (T. 201). Hence, SSA's determination that his disability ended and that he received overpayments of disability insurance benefits in the amount of $25,949.10, during the period October 1, 2007, to July 31, 2010, is correct. Johnson accepted those findings when he decided not to appeal SSA's Notice of Disability Cessation and elected, instead, to seek a waiver of recovery of the overpayment.

Johnson's assertion that he is without fault because he did not know he was overpaid simply because he continued receiving them is a *non sequitur*. At best, it was an honest mistake to assume that because he continued receiving benefits, he must be entitled to them. That mistake, even if free from guile, does not satisfy his evidentiary burden. And, as noted earlier, the SSA's mistake in continuing to provide monthly benefits for almost three years is irrelevant.

Johnson also suggests that he is without fault because he reported all of his earnings to SSA, specifically to "Mrs. Yeager" in the SSA's Schenectady, New York district field office, every year at "tax time." (T. 19-21). Johnson proffered no documentation or other proof regarding submission of records to the field office, even though he would have been given receipts and instructed to keep them with his other important social security documentation had he done so. (T. 50, 139, 160, 227). District office records contain no reports or internal documentation of contacts by Johnson regarding his earnings. (T. 50, 157, 160, 227). Finally, in remarks summarizing a personal conference with Johnson at the field office, it was noted that Mrs. Yeager left the Schenectady field office five

---

[7] In 2007, Johnson earned $22,056 (which equates to $1,838 per month), which was more than double the monthly amount found in the SGA Table ($900 per month). Likewise, in 2008, Johnson earned $20,011 (which equates to $1,667.58), an amount in excess of the SGA threshold of $940 per month. Similarly, in 2009, he earned $19,267 (which equates to $1,605.58), again, far exceeding the $980 SGA table for 2009. (T. 201).

to ten years earlier than when Johnson says he reported his trial work period earnings to her.[8] (T. 139, 228). This evidence suggests that Johnson actually did not go to the district office or submit earnings information until after he received an earnings alert from the payment center in June 2010. (T. 49-50).

Johnson accepted payments that he knew or could have expected to know were incorrect. This was not Johnson's first time dealing with overpayments. In 2002, Johnson received an overpayment of disability insurance benefits in the amount of $14,843 after receiving a workers' compensation settlement. (T. 13, 22-23, 198). He filed a request for waiver with respect to that overpayment. Having been through the overpayment and waiver process in the past, Johnson was familiar with reporting requirements, and should have known that substantial gainful activity rendered him ineligible to receive benefits. *See* 20 C.F.R. § 404.507 (individual will be considered to be at fault in receiving overpayment where incorrect payment resulted from, *inter alia*, his failure to furnish material information, or acceptance of payment which he knew or could have been expected to know was incorrect).

There is no evidence reflecting an impairment that would significantly affect Johnson's ability to comply with reporting requirements. (T. 13). Johnson operated his own business during the period at issue, and he did not assert at the evidentiary hearing before ALJ Pickett or in his complaint that his affective disorder mental impairment prevented him from comprehending of complying with work and earnings reporting requirements. (*Id.*).

---

[8] On January 11, 2011, a personal conference was conducted at the field office with Johnson, at which time he was offered the opportunity to review his folder. (T. 227-28).

Under these circumstances, substantial evidence supports ALJ Pickett's determination that Johnson received an overpayment of benefits; that Johnson knew or should have known that he was not entitled to continuing benefits; that Johnson failed to meet his burden of establishing he was "without fault;" and, consequently, that he was properly denied a waiver of recovery.

## VII. Recommendation

Johnson's request to remand this action should be DENIED. The Commissioner's decision should be AFFIRMED.

## VIII. Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011) (summary order); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the   15   day of      July      2014.

*/s/ Earl S. Hines*
Earl S. Hines
United States Magistrate Judge